# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued April 15, 2008          Decided June 20, 2008

No. 07-1405

OMAR KHADR,
PETITIONER

v.

UNITED STATES OF AMERICA AND UNITED STATES COURT OF
MILITARY COMMISSION REVIEW,
RESPONDENTS

On Respondents' Motion to Dismiss the Petition for Review
for Lack of Jurisdiction

*Karl M. Thompson* argued the cause for petitioner. With him on the brief were *William C. Kuebler* and *Rebecca S. Snyder*, Counsel, Office of Military Commissions.

*John F. De Pue*, Attorney, U.S. Department of Justice, argued the cause for respondents. With him on the briefs was *Kenneth L. Wainstein*, Assistant Attorney General.

Before: SENTELLE, *Chief Judge*, ROGERS and BROWN, *Circuit Judges*.

Opinion for the Court filed by *Chief Judge* SENTELLE.

SENTELLE, *Chief Judge*: Petitioner Omar Ahmed Khadr was captured on a battlefield in 2002, charged by the United States with war crimes, and referred to a military commission for trial. With this petition, Khadr seeks review of a preliminary procedural decision made in the course of the ongoing proceedings before the military commission. We dismiss the petition for lack of jurisdiction. The Military Commissions Act of 2006 limits our jurisdiction to review of "final judgment[s] rendered by a military commission" which have been "approved by the convening authority" and for which "all other appeals under [the Military Commissions Act] have been waived or exhausted." 10 U.S.C. § 950g(a)(1). The preliminary pretrial decision that Khadr contests is not such a "final judgment."

## I. Background

Omar Ahmed Khadr is a Canadian citizen who was taken into military custody in 2002 during the hostilities in Afghanistan. He was transported to the United States detention facility at Guantanamo Bay, Cuba, where he has since been detained. In 2004, a three-member Combatant Status Review Tribunal ("CSRT") determined that he was properly classified as an "enemy combatant" and as an individual who was "a member of, or affiliated with al Qaeda."

The United States charged Khadr under the Military Commissions Act of 2006, Pub. L. No. 109-366, 120 Stat. 2600, with murder in violation of the law of war, attempted murder in violation of the law of war, conspiracy, providing material support for terrorism, and spying. The charge alleges that Khadr murdered U.S. Army Sergeant First Class Christopher Speer on or about July 27, 2002 by throwing a hand grenade at U.S. forces; that Khadr attempted to murder U.S. or coalition troops between June 1 and July 27, 2002 by converting land mines into improvised explosive devices and planting them in

the pathway of U.S. and coalition forces; that Khadr conspired with, and provided material support to, al Qaeda between June 1 and July 27, 2002 when he received training, conducted surveillance, and engaged in battle on al Qaeda's behalf; and that Khadr spied for al Qaeda by recording the travel patterns of U.S. forces. Each count charged that Khadr was "a person subject to trial by military commission as an alien unlawful enemy combatant."

On June 4, 2007, the military judge presiding over Khadr's military commission dismissed all charges without prejudice. He found that the commission lacked jurisdiction over Khadr because Khadr's CSRT had not found that he was an "unlawful enemy combatant." The Military Commissions Act links the commission's jurisdiction to an individual's status as an "unlawful enemy combatant" by giving it "jurisdiction to try any offense made punishable by this chapter or the law of war when committed by an alien unlawful enemy combatant," 10 U.S.C. § 948d(a), and denying it "jurisdiction over lawful enemy combatants," *id.* § 948d(b). Thus, the military judge found that the CSRT's classification of Khadr as an "enemy combatant" was not enough to authorize the commission's exercise of jurisdiction over him.

The military judge further found that the commission lacked authority to make the jurisdictional finding that Khadr was an "unlawful" enemy combatant. Citing language in the Military Commissions Act that makes a CSRT's finding "that a person is an unlawful enemy combatant . . . dispositive for purposes of jurisdiction for trial by military commission under this chapter," 10 U.S.C. § 948d(c), the military judge reasoned that only a CSRT could make the "unlawful enemy combatant" finding. Because there was no such finding in this case, the military judge ordered the charges dismissed without prejudice.

The United States appealed the military judge's order to the Court of Military Commission Review ("CMCR"). In a decision issued on September 24, 2007, the CMCR affirmed the decision in part and reversed it in part. The CMCR agreed that the CSRT's "enemy combatant" finding did not satisfy the "unlawful enemy combatant" requirement of the Military Commissions Act, but disagreed with the military judge's conclusion that a military commission was not authorized to make the appropriate jurisdictional finding in the first instance. The Military Commissions Act defines an "unlawful enemy combatant" as either:

(i) a person who has engaged in hostilities or who has purposefully and materially supported hostilities against the United States or its co-belligerents who is not a lawful enemy combatant (including a person who is part of the Taliban, al Qaeda, or associated forces); or

(ii) a person who, before, on, or after the date of the enactment of the Military Commissions Act of 2006, has been determined to be an unlawful enemy combatant by a Combatant Status Review Tribunal or another competent tribunal established under the authority of the President or the Secretary of Defense.

10 U.S.C. § 948a(1)(A). The CMCR reasoned that the use of the word "or" between subsections (i) and (ii) of the statutory definition created alternative approaches for establishing military commission jurisdiction, with the first subsection allowing the commission to determine its jurisdiction and the second subsection applying in those cases where a CSRT has already made a dispositive "unlawful enemy combatant" finding. The CMCR reversed "[t]he military judge's ruling [that] he lacked authority to hear evidence on, and ultimately

decide, the matter of Mr. Khadr's 'unlawful enemy combatant status' under the provisions of the [Military Commissions Act]" and returned the "record of trial . . . to the military judge, who shall, consistent with this opinion, conduct all proceedings necessary to determine the military commission's jurisdiction over Mr. Khadr."

On October 9, 2007, Khadr petitioned this Court for review of the CMCR's decision.

## II. Analysis

The government asserts that this petition should be dismissed for lack of jurisdiction. "Because Article III courts are courts of limited jurisdiction, we must examine our authority to hear a case before we can determine the merits." *United States v. British Am. Tobacco Australia Servs., Ltd.*, 437 F.3d 1235, 1239 (D.C. Cir. 2006) (quoting *Wyo. Outdoor Council v. U.S. Forest Serv.*, 165 F.3d 43, 47 (D.C. Cir. 1999)). As the party claiming subject matter jurisdiction, Khadr has the burden to demonstrate that it exists. *Moms Against Mercury v. FDA*, 483 F.3d 824, 828 (D.C. Cir. 2007). He contends that jurisdiction is proper under the Military Commissions Act of 2006 and under the collateral order doctrine. We disagree.

### A. *Military Commissions Act*

The Military Commissions Act provides that "the United States Court of Appeals for the District of Columbia Circuit shall have exclusive jurisdiction to determine the validity of a final judgment rendered by a military commission (as approved by the convening authority) under this chapter," except that "[t]he Court of Appeals may not review the final judgment until all other appeals under this chapter have been waived or exhausted." 10 U.S.C. § 950g(a)(1). Khadr contends that this

jurisdictional provision has been satisfied because the military judge issued an order dismissing all charges and because all appeals of that order have been exhausted. We do not agree.

The military judge's order is not a "final judgment" as required by 10 U.S.C. § 950g(a)(1)(A). It has long been well established that the reversal of a lower court's decision sets aside that decision, leaves it "without any validity, force, or effect," and requires that it be treated thereafter as though it never existed. *Butler v. Eaton*, 141 U.S. 240, 244 (1891); *see also Wheeler v. John Deere Co.*, 935 F.2d 1090, 1096 (10th Cir. 1991); *Atlantic Coast Line R.R. Co. v. St. Joe Paper Co.*, 216 F.2d 832, 833 (5th Cir. 1954); *Keller v. Hall*, 111 F.2d 129, 131 (9th Cir. 1940); *Corpus Juris Secundum*, Federal Courts § 712 (2008). Once the military judge's order in this case was reversed by the CMCR, it lost all legal effect. An order that has become a legal nullity could not possibly constitute a "final judgment."[*]

---

[*]To the extent Khadr contends that the CMCR decision is a "final judgment" under the Military Commissions Act, he fares no better. Although Khadr asserts in his brief that the military judge's order is the appealable "final judgment," Appellant's Br. at 6, his petition to this court sought "review of the decisions of the [CMCR]," Petition for Review at 1, and the substance of his arguments on brief challenges the CMCR remand order rather than the military judge's order in his favor. But "'[a] remand order usually is not a final decision,'" *Lakes Pilots Ass'n, Inc. v. U.S. Coast Guard*, 359 F.3d 624, 625 (D.C. Cir. 2004) (quoting *NAACP v. U.S. Sugar Corp.*, 84 F.3d 1432, 1436 (D.C. Cir. 1996)). Because the resolution of the jurisdictional issue does not leave "solely 'ministerial' proceedings," *In re St. Charles Preservation Investors, Ltd.*, 916 F.2d 727, 729 (D.C. Cir. 1990), to be conducted by the military judge on remand, the CMCR's remand order is not final for purposes of appellate jurisdiction.

Further, the "final judgment" must be "approved by the convening authority" to satisfy the statute. *See* 10 U.S.C. § 950g(a)(1)(A). The military judge's order in this case has not been approved by the convening authority, nor could it be at this juncture. The Military Commissions Act defers convening authority review until after a military commission has found guilt and announced a sentence. *See* 10 U.S.C. § 950b. In this way, the statute clarifies that the "final judgment" contemplated by the statute is very "final." It is not a pretrial procedural decision like the one at issue here.

Khadr advances three main arguments in an attempt to evade the plain language requirements of 10 U.S.C. § 950g(a)(1)(A). None has merit. First, he argues that his reading of the Military Commissions Act, which would allow review of the military judge's order irrespective of the finality of the CMCR's decision, is not unique. He points to another statute, 38 U.S.C. § 7292(a), which does not explicitly premise appellate review of trial-level decisions on the finality of an intermediate appellate court's decision. But that statute, which applies to appeals of decisions from the Court of Appeals for Veterans Claims and thus has no relevance here, does not expressly require a "final" decision from the trial-level court. *See Williams v. Principi*, 275 F.3d 1361, 1363 (Fed. Cir. 2002) (quoting 38 U.S.C. § 7292(a)). The Military Commissions Act does.

Khadr next seeks support from jurisdictional procedures in the Uniform Code of Military Justice (UCMJ), but Congress expressly stated in the Military Commissions Act that the UCMJ does not apply to trials by military commission unless specifically indicated. *See* 10 U.S.C. § 948b(c)–(d). Congress did not specifically provide for the application of any jurisdictional provisions from the UCMJ to appeals of military commission decisions, but instead required a final judgment,

approved by the convening authority, and appealed through the administrative process. Thus, the UCMJ provides no jurisdictional help to Khadr.

Finally, Khadr argues that the Government has shown, through its conduct and regulations, that it agrees that an appeal is authorized in this case. Khadr points to notice he was given when he was served with the CMCR's decision "that Rules for Military Commission 908 and 1201 provide 'a right to petition the United States Court of Appeals for the District of Columbia Circuit' within 20 days of the date of this notification." Rules for Military Commission 908 and 1201, he argues, support the notice's statement because they speak in general terms of a right to appeal "the decision" of the CMCR on "any appeal." The problem with Khadr's argument is that "courts of appeals have only [the] jurisdiction [that] Congress has chosen to confer upon them" regardless of the actions of the parties, even when one of those parties is the Executive Branch. *Moms Against Mercury*, 483 F.3d at 827 (quoting *Cutler v. Hayes*, 818 F.2d 879, 887 n.61 (D.C. Cir. 1987)). "Parties, of course, cannot confer jurisdiction; only Congress can do so." *Weinberger v. Bentex Pharms., Inc.*, 412 U.S. 645, 652 (1973); *see also Kontrick v. Ryan*, 540 U.S. 443, 452 (2004). Thus, once Congress determined the limits of this Court's jurisdiction in the Military Commissions Act, no rule, regulation, or notice given by the Executive Branch could expand those limits. The statute requires a final judgment by a military commission, approved by the convening authority, for which all administrative review has been exhausted, 10 U.S.C. § 950g(a)(1), and requires that Executive Branch rules and regulations "not be contrary to or inconsistent with" those statutory requirements, 10 U.S.C. § 949a(a). The regulations and notice given Khadr did not change the statutory preconditions to our jurisdiction. Because they have not yet been met in this case, the Military Commissions Act does not give us jurisdiction.

## B. *Collateral Order Doctrine*

For the first time in its reply brief, the Government argued that the collateral order doctrine does not apply to proceedings under the Military Commissions Act. We generally refuse to entertain arguments raised for the first time in a party's reply brief. *Qwest Servs. Corp. v. FCC*, 509 F.3d 531, 536 (D.C. Cir. 2007). While we will not consider the Government's argument here, Khadr's argument fails even if the collateral order doctrine were to apply to proceedings under the Act.

The collateral order doctrine allows interlocutory review of a "small class" of decisions which "conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and [are] effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978). We hold that the order at issue here cannot satisfy the third requirement because it is reviewable on appeal from final judgment, and so will not consider the first two requirements of the doctrine.

The Supreme Court has repeatedly "reiterated that interlocutory or 'piecemeal' appeals are disfavored." *United States v. MacDonald*, 435 U.S. 850, 853 (1978) (citing cases); *see also United States v. Hollywood Motor Car Co.,* 458 U.S. 263, 265 (1982). The collateral order doctrine is intentionally "narrow and selective in its membership," *Will v. Hallock*, 546 U.S. 345, 350 (2006), and is especially so in criminal cases where "'encouragement of delay is fatal to the vindication of the criminal law,'" *MacDonald*, 435 U.S. at 853–54 (quoting *Cobbledick v. United States*, 309 U.S. 323, 325 (1940)). In criminal cases, then, the collateral order doctrine must be applied "'with utmost strictness.'" *United States v. Cisneros*, 169 F.3d 763, 767 (D.C. Cir. 1999) (quoting *Flanagan v. United States*, 465 U.S. 259, 265 (1984)).

At issue here is a pretrial jurisdictional decision in a criminal case.  The Supreme Court has held that "the denial of a claim of lack of jurisdiction is not an immediately appealable collateral order" because "the right not to be subject to a binding judgment may be effectively vindicated following final judgment." *Van Cauwenberghe v. Baird*, 486 U.S. 517, 527 (1988) (citing *Catlin v. United States*, 324 U.S. 229, 236 (1945)).  The Court, therefore, has "declined to hold the collateral order doctrine applicable where a district court has denied a claim . . . that the suit against the defendant is not properly before the particular court because it lacks jurisdiction." *Lauro Lines S.R.L. v. Chasser*, 490 U.S. 495, 500 (1989); *see also United States v. Levy*, 947 F.2d 1032, 1034 (2d Cir. 1991); *United States v. Layton*, 645 F.2d 681, 683 (9th Cir. 1981); *United States v. Sorren*, 605 F.2d 1211, 1213–14 (1st Cir. 1979).  Because jurisdictional decisions do not satisfy the doctrine's requirements, it necessarily follows that the decision in this case, which does not yet decide jurisdiction, does not warrant collateral order doctrine review.  This procedural decision, as well as any subsequent jurisdictional decision, will be reviewable if necessary following a final judgment.

Khadr seeks special treatment for this procedural order because it involves a military commission.  He contends that there is a public interest in ensuring the legality and legitimacy of military commissions and that the interest counsels in favor of reviewing procedural issues as they arise to make certain that military commissions are operating fairly and in conformity with the law.  This public interest, Khadr argues, will be irreparably harmed if the public is to later learn that Khadr was tried by a tribunal that did not have jurisdiction over him.  Thus, he argues, he satisfies the requirements of the doctrine as enunciated by the Supreme Court in *Will*: "it is not mere avoidance of a trial, but avoidance of a trial that would imperil a substantial public interest, that counts when asking whether an

order is 'effectively' unreviewable if review is to be left until later." 546 U.S. at 353.

There is no substantial public interest at stake in this case that distinguishes it from the multitude of criminal cases for which post-judgment review of procedural and jurisdictional decisions has been found effective. The Supreme Court in *Will* clarified that the "substantial public interest" claimed by the petitioner cannot be solely his "right not to stand trial." 546 U.S. at 350–51. There must also be "some particular value of a high order" that merits appealability prior to trial. *Id.* at 352. Where a decision rejects a claim of absolute immunity, there is a valuable interest in "honoring the separation of powers." *Id.*; *see Nixon v. Fitzgerald*, 457 U.S. 731, 742 (1982). Where a decision rejects a claim of qualified immunity, there is a valuable interest in "preserving the efficiency of government and the initiative of its officials." *Will*, 546 U.S. at 352; *see Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). Where a decision rejects a State's claim to Eleventh Amendment immunity, there is a valuable interest in "respecting a State's dignitary interests." *Will*, 546 U.S. at 352; *see Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144–45 (1993). And where a criminal defendant has been denied his defense of double jeopardy, there is a valuable interest in "mitigating the government's advantage over the individual." *Will*, 546 U.S. at 352–53; *see Abney v. United States*, 431 U.S. 651, 660 (1977). There is no comparable significant public interest implicated here. Instead, Khadr has pointed solely to the interest that the public has in ensuring that all criminal proceedings are just. That interest does not warrant our interruption of this criminal proceeding just because it is a military commission. This Court will have opportunity to review this procedural decision post-judgment if necessary and can then determine whether the commission properly determined its jurisdiction and acted in

conformity with the law.  The collateral order doctrine does not authorize us to make those determinations now.

### III.  Conclusion

For the reasons discussed above, we dismiss the petition for lack of jurisdiction.