# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued September 18, 2020        Decided January 26, 2021

No. 19-1234

PHILIP LAWRENCE SUNDEL,
PETITIONER

v.

UNITED STATES OF AMERICA,
RESPONDENT

On Petition for Review of a Final Order of
the U.S. Court of Military Commission Review

*Philip Sundel*, pro se, argued the cause and filed the briefs for petitioner.

*Jeffrey M. Smith*, Attorney, U.S. Department of Justice, argued the cause and filed the brief for respondent. *Joseph F. Palmer* and *Danielle S. Tarin*, Attorneys, entered appearances.

Before: HENDERSON and WALKER, *Circuit Judges*, and SILBERMAN, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* WALKER.

WALKER, *Circuit Judge*: In this case, a defense attorney named Philip Sundel (with no client) petitioned a court (with no jurisdiction) to reverse a procedural ruling (excluding the

public from a classified hearing) in an appeal filed by other attorneys who (like Sundel) have no client. Welcome to Guantanamo Bay.

I

Ibrahim al Qosi was and remains an Islamist terrorist. Ten years ago, he pled guilty to two counts of terrorism-related charges. As part of his plea agreement, al Qosi waived his right to appeal. In exchange, the government released him to his native Sudan after just two years' imprisonment. Some time later, al Qosi resurfaced as a leader of al Qaeda in the Arabian Peninsula, encouraging lone wolf terrorist attacks against the United States. In the years since then — indeed, in the eight years since his release from custody — al Qosi has had no contact with his former lawyers at a division of the Department of Defense called the Military Commissions Defense Organization. But al Qosi's former lawyers have nonetheless continued to challenge his conviction.

Enter Philip Sundel, another lawyer at the Military Commissions Defense Organization. For reasons he didn't offer when asked by this Court, he wanted to watch a recent hearing on al Qosi, even though he has never been al Qosi's lawyer.[1]

Because most proceedings for Guantanamo Bay detainees are open to the public, Sundel's desire to watch the hearing would not normally have been a problem. But this particular hearing concerned classified information. So the military judge closed it.

---

[1] *See generally United States v. DuBay*, 37 C.M.R. 411 (C.M.A. 1967) (per curiam) (establishing a hearing to determine collateral issues that require findings of fact and conclusions of law).

Sundel was undeterred. He moved the court to permit him to attend. The military judge denied his motion.

Sundel then asked the Court of Military Commission Review to allow him to read an unredacted transcript of the closed hearing. He lost again.

Now Sundel asks this Court for relief.

II

At oral argument, the Court raised concerns about Sundel's prudential standing — and the possible lack thereof. Prudential standing encompasses "at least three broad principles: the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014) (cleaned up).

Here, Sundel does not invoke this cause of action based on his representation of detainees at Guantanamo Bay. That part of his job is, for these purposes, irrelevant. Instead, he is suing as a member of the public, standing in the same shoes as any other citizen could.

But Sundel, to state the obvious, is no ordinary citizen. He works for the Department of Defense. That is the same agency that runs the military tribunals at Guantanamo Bay. And agency employees don't usually drag their agency into federal court after losing an internal policy debate. After all, it would be odd for a lawyer at the FCC to sue the FCC over

the FCC's adoption of a procedural rule in a recent FCC adjudication — and to do so as a member of the public. So too is it odd that Sundel, a lawyer within the Department of Defense, is suing the Department, as a member of the public, over an internal policy that closed a classified hearing.

To be clear, government lawyers often have a right and a duty to argue against proposed policies within the agency's walls. And when they think a policy is illegal, it is their job to say so. *See, e.g.*, Steven A. Steinbach, *The Two Lives of Laurence Silberman: Political Service and Judging*, available at https://dcchs.org/wp-content/uploads/2019/06/Silberman-oral-history-summary-revised.pdf (Undersecretary of Labor Laurence Silberman submitted a resignation letter "after a run-in with Chuck Colson, who was improperly 'trying to fix' DOL enforcement actions"). But we are not saying that, having lost the internal debate, a government lawyer can, as a member of the public, litigate the debate's outcome in federal court.

Nor are we opining on the constitutionality of that debate's outcome. It is an open question whether the public has a First Amendment right to attend hearings related to detainees at Guantanamo Bay. For now, we simply note that allowing a government lawyer to litigate that question as a member of the public would invite ill-advised litigation in other contexts.

In short, Sundel may or may not have prudential standing.[2] But we need not address that precise issue today because there is a clearer reason we must dismiss Sundel's case: We lack subject matter jurisdiction.

---

[2] Our Circuit recognizes prudential standing as jurisdictional, *Association of Battery Recyclers, Inc. v. EPA*, 716 F.3d 667, 674 (D.C. Cir. 2013) (per curiam), but some have called that into question in light of Supreme Court precedent, *see id.* at 677 (Silberman, J., concurring) (collecting cases).

5

III

The Constitution gives Congress the power to "ordain and establish" "inferior Courts." U.S. CONST. art. III, § 1. And if Congress can establish inferior courts, Congress can also set the boundaries for those courts' jurisdiction. *E.g.*, *Moms Against Mercury v. FDA*, 483 F.3d 824, 827 (D.C. Cir. 2007) (quoting *Cutler v. Hayes*, 818 F.2d 879, 887 n.61 (D.C. Cir. 1987)). As to appeals taken from the military commission system, Congress vested this Court with jurisdiction only over "the validity of a final judgment rendered by a military commission (as approved by the convening authority and, where applicable, as affirmed or set aside as incorrect in law by the United States Court of Military Commission Review)." 10 U.S.C. § 950g(a); *see Khadr v. United States*, 529 F.3d 1112, 1117 (D.C. Cir. 2008).

Here, Sundel ultimately appeals the military judge's decision to close the hearing. We can review that challenge only if it is, among other things, a "final judgment." In the military commission system, a final judgment is akin to a conviction.[3] Yet Sundel appeals not a conviction — a *judgment* — but rather a *decision*. Although other jurisdictional statutes may allow an aggrieved party to appeal decisions, *see, e.g.*, 28 U.S.C. § 1291, in the military commission context, Congress took a narrower approach and allowed appeals only from judgments. Because Sundel does not appeal a judgment, we lack jurisdiction.

---

[3] "The MCA provides an appeal as of right to our [C]ourt. The question in this case is when that argument to us may occur. The district court decided that Article III review should occur at the time that Congress contemplated: *after any conviction* and accompanying appeal in the military system." *In re Al-Nashiri*, 835 F.3d 110, 118, 122 (D.C. Cir. 2016) (emphasis added).

6

Sundel counters that the collateral-order doctrine gives this Court jurisdiction. The collateral-order doctrine "permits appeals not only from a final decision by which a district court disassociates itself from a case, but also from a small category of decisions that, although they do not end the litigation, must nonetheless be considered 'final.'" *Swint v. Chambers County Commission*, 514 U.S. 35, 42 (1995) (cleaned up). The doctrine is not an independent basis for jurisdiction but rather a "practical construction" of the word "final" in 28 U.S.C. § 1291 — a practical construction that Sundel argues should apply here. *See Swint*, 514 U.S. at 41–42 (cleaned up). Even if we adopted Sundel's construction, we would still lack jurisdiction. "Final" is an adjective, and "[a]djectives modify nouns — they pick out a subset of a category that possesses a certain quality." *Cf. Weyerhaeuser Co. v. U.S. Fish & Wildlife Service*, 139 S. Ct. 361, 368 (2018). Thus, "[a]ccording to the ordinary understanding of how adjectives work," *id.*, a "final judgment" would still need to be a "judgment." So no matter how broadly or narrowly we construe the word "final" — no matter how many practical considerations we take into account — we would still, at the end of the day, lack a judgment. And because we do not have a judgment, we do not have jurisdiction.

\*   \*   \*

We dismiss Sundel's petition for lack of subject matter jurisdiction.