# United States Court of Appeals
## For the First Circuit

No. 09-2067

CONCILIO DE SALUD INTEGRAL DE LOÍZA, INC. (CSILO);
JUNTA DEL CENTRO DE SALUD COMMUNAL JOSÉ S. BELAVAL, INC.,

Plaintiffs, Appellants,


CONSEJO DE SALUD PLAYA PONCE, d/b/a Centro de Diagnostico y
Tratamiento de la Playa de Ponce; GURABO COMMUNITY HEALTH CENTER,
INC.; MIGRANT HEALTH CENTER, INC.; TOA ALTA COMPREHENSIVE
URBAN/RURAL ADVANCED HEALTH SERVICES, INC.; ATLANTIC MEDICAL
CENTER, INC.; CAMUY HEALTH SERVICES, INC.; CENTRO DE SALUD
FAMILIAR DR. JULIO PALMIERI FERRI, INC.; CIALES PRIMARY HEALTH
CARE SERVICES, INC; CORP. DE SERV. MEDICOS PRIMARIOS Y PREVENCIÓN
DE HATILLO, INC.; CORP. DE SERVICIOS DE SALUD Y MEDICINA
AVANZADA, INC.; CORP. DE SERVICIOS INTEGRALES DE SALUD; EL CENTRO
DE SALUD DE LARES, INC.; EL CENTRO DE SERVICIOS PRIMARIOS DE
SALUD DE PATILLAS, INC.; HOSPITAL GENERAL CASTANAR, INC.; MOROVIS
COMMUNITY HEALTH CENTER, INC.; RINCON HEALTH CENTER, INC.; RIO
GRANDE COMMUNITY HEALTH CENTER, INC.,

Plaintiffs,

v.

ROSA PEREZ-PERDOMO, Secretary, Department of Health Commonwealth
of Puerto Rico; COMMONWEALTH OF PUERTO RICO; PUERTO RICO
DEPARTMENT OF HEALTH; U.S. DEPARTMENT OF HEALTH & HUMAN SERVICES;
MICHAEL O. LEAVITT, as Secretary of U.S. Department of Health,

Defendants, Appellees.


APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Gustavo A. Gelpí, U.S. District  Judge]


Before
Lynch, Chief Judge,
Boudin and Howard, Circuit Judges.

Robert A. Graham with whom James L. Feldesman and Feldesman Tucker Leifer Fidell LLP were on brief for appellants.

Eliezer Aldarondo-López with whom Eliezer Aldarondo-Ortiz, Maria N. Hadad Orta and Aldarondo & López were on brief for appellees.

———————————

October 27, 2010

———————————

**BOUDIN**, <u>Circuit Judge</u>.  Two Puerto Rican community health centers, Concilio de Salud Integral de Loíza, Inc. ("Loíza"), and Junta del Centro de Salud Communal José S. Belaval, Inc. ("Belaval"), appeal from a district court order denying them the relief they seek, namely, an injunction requiring payment by Puerto Rico's Secretary of Health ("Secretary") of Medicaid reimbursements that the two centers claim to be due to them under federal law and prior decisions in this long continuing litigation.[1]

Medicaid is supported by both state and federal funds and administered by state governments; for the purposes of Medicaid, Puerto Rico is a "State."  42 U.S.C. § 1301(a)(1) (2006); 42 C.F.R. § 400.203 (2009).  To participate in Medicaid, states are required to provide specified health services for "underserved" areas or populations through "Federally-qualified health centers" ("FQHCs")--healthcare facilities that are eligible to receive certain federal grants.  <u>See</u> 42 U.S.C. §§ 254b(a), 1396a(a)(10)(A), 1396d(a)(2)(C), 1396d(l)(2)(B).  Loíza and Belaval are FQHCs.

The Medicaid Act requires states to reimburse FQHCs for the costs of providing services to Medicaid patients, 42 U.S.C. § 1396a(bb), under what is referred to as the "Prospective Payment

---

[1]<u>See</u> <u>Concilio de Salud Integral de Loíza</u> v. <u>Pérez-Perdomo</u>, 551 F.3d 10 (1st Cir. 2008) ("<u>Belaval IV</u>"); <u>Dr. José S. Belaval, Inc.</u> v. <u>Pérez-Perdomo</u>, 488 F.3d 11 (1st Cir. 2007) ("<u>Belaval III</u>"); <u>Dr. José S. Belaval, Inc.</u> v. <u>Pérez-Perdomo</u>, 465 F.3d 33 (1st Cir. 2006) ("<u>Belaval II</u>"); <u>Rio Grande Cmty. Health Ctr., Inc.</u> v. <u>Rullan</u>, 397 F.3d 56 (1st Cir. 2005) ("<u>Belaval I</u>").

System" ("PPS"). See Belaval I, 397 F.3d at 61. Under the PPS, the reimbursement for a given year is calculated by multiplying the number of visits by Medicaid patients to the FQHC in that year by the average cost per patient visit in fiscal years 1999 and 2000, adjusting to account for an FHQC's change in services and inflation. 42 U.S.C. § 1396a(bb)(3).

Puerto Rico administers Medicaid payments through managed care organizations ("MCOs"), which, if they do not operate their own medical facilities, contract with FQHCs such as Loíza and Belaval to provide services to Medicaid patients. Belaval I, 397 F.3d at 62. Where the MCO pays an FQHC less than the amount calculated under the PPS formula--which is not itself unlawful, see 42 U.S.C. § 1396b(m)(2)(A)(ix)--the state must pay the FQHCs a supplemental or "wraparound" payment to make up for the difference. Id. § 1396a(bb)(5)(A). Those wraparound payments must be made at least three times a year. Id. § 1396a(bb)(5)(B).

The present litigation began in June 2003, when Loíza, Belaval and another health center not party to this appeal sued the Secretary in his official capacity (and Puerto Rico as well but it was later dropped as defendant) claiming that the Secretary failed to make wraparound payments as required by the Medicaid Act. On March 31, 2004, the district court granted emergency relief that required the Secretary to make wraparound payments to Loíza. The court laid out a specific formula for the Secretary to follow while

making these emergency wraparound payments.  That order was appealed, and we affirmed.  Belaval I, 397 F.3d at 77.

On November 1, 2004, the district court, adopting a magistrate judge's report and recommendation, granted a preliminary injunction requiring the Secretary to establish a regime to assure PPS payments and to make future wraparound payments to Loíza, Belaval and another health center not party to this appeal using the same formula for payments adopted in the March 31, 2004, order. Thereafter we reversed district court orders that had narrowed the relief as to Belaval, Belaval II, 465 F.3d at 38, and excluded it from protection, Belaval III, 488 F.3d at 17.

On March 27, 2007, the district court found that the Secretary had created a PPS Office to assure wraparound payments and so vacated the November 1, 2004, preliminary injunction as to Loíza, nevertheless ordering the Secretary to "continue to apply to Loiza the same baseline calculation data used by the court," referencing its March 31, 2004, emergency order.  The court made a comparable vacation order as to Belaval on July 3, 2007, but again stated that "the Secretary is permanently enjoined to the effect that she shall continue to pay Belaval using the baseline calculation adopted by the Court."[2]

_____

[2]In its judgment issued the same day, the court reiterated that Puerto Rico is "permanently enjoined and ORDERED forthwith to continue using the 2001 baseline calculation data adopted by the Court, and hence, shall under its PPS system continue making payments accordingly."  On the same day, the district court entered

-5-

Loíza and Belaval appealed and on December 15, 2008, we reversed the vacation of the preliminary injunction, holding that the district court never determined whether the Secretary was making payments in accordance with the statutory PPS requirements. Belaval IV, 551 F.3d at 17. We also reversed the permanent injunctions requiring the Secretary to use the district court's formula because there was still a live set of disputes to be settled as to the calculation of payments. Id. at 18-19.

On the heels of Belaval IV, Loíza and Belaval filed a motion with the district court on March 18, 2009, requesting it to order the wraparound payments they claim were due to them. Specifically, Loíza and Belaval requested reimbursements for the fiscal quarters spanning the period starting when the district court vacated the November 1, 2004, preliminary injunction--March 27, 2007, for Loíza and July 3, 2007, for Belaval--and ending when this court reversed the district court's termination orders on December 15, 2008--a period of time we will refer to hereafter as the "gap period".[3]

---

a "Second Amended Judgment Nunc Pro Tunc" modifying Loíza's previous judgments to mirror the Belaval judgment.

[3]Loíza asserts that the total reimbursements due to it for the gap period amount to between $11,333,716.39 and $13,967,218.64; Belaval claims the figure owed it is between $7,941,188.37 and $9,506,554.65. The lower numbers are Loíza and Belaval's estimates without the statutorily-required inflation multiplier, while the higher numbers are with it. See 42 U.S.C. § 1396a(bb)(3)(A).

Following an opposition by the Secretary, the district court on May 12, 2009, ruled that during the time the preliminary injunction was vacated "the Secretary was not under any court-imposed obligation to issue any wraparound payments" and so any payments would be retrospective relief barred by the Eleventh Amendment. Loíza and Belaval timely filed their appeal. Before turning to the merits, we address a question (which we asked the parties to brief) concerning our own jurisdiction.

Although there is no final judgment in this case disposing of all claims as to all parties, 28 U.S.C. § 1291 (2006), appellate courts may hear interlocutory appeals from orders "granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions." Id. § 1292(a)(1). The health centers assert that the district court's refusal to order the payments sought disregarded their rights established by earlier injunctive relief. If they are right, then the court's refusal to act effectively "modified" an existing injunction. See Morales Feliciano v. Rullan, 303 F.3d 1, 7 (1st Cir. 2002). To this extent, the jurisdictional issue and the merits overlap.

Of course, the order refusing to compel payments, from which the health centers now seek to appeal, does not by its terms modify any injunction; and where a modification is de facto rather than explicit, a showing of serious irreparable injury and an

-7-

exigent need for an immediate appeal are required under <u>Carson</u> v. <u>American Brands, Inc.</u>, 450 U.S. 79, 84 (1981). The <u>Carson</u> finding is easily made: tens of millions of dollars are at stake that, as noted in <u>Belaval II</u>, are necessary to the financial health and stability of these community health centers. 465 F.3d at 36 & n.2. We turn, therefore, to the merits.

From the start of the gap period to its end, the Secretary had to know that he was under a court-imposed duty to provide wraparound payments in accord with the district court's original formula. The district court's March 27, 2007, and July 3, 2007, orders, although they vacated the preliminary injunction, also permanently enjoined the Secretary to continue making wraparound payments after the preliminary injunction was vacated. <u>See</u> note 2, above. Nothing changed until we issued our decision in <u>Belaval IV</u>, ending the gap period.

The Secretary argues that because we reversed the district court's permanent injunctions in <u>Belaval IV</u>, the injunctions retroactively lost all effect and became a nullity as of the time they were issued. And since the preliminary injunctions had been previously (albeit erroneously) vacated by the district court when the permanent injunctions went into effect, the Secretary reasons that no <u>valid</u> court-ordered obligation to make payments existed during the payment period. Thus, the Secretary seeks to dance between the raindrops.

-8-

Of course, a federal statute requiring proper wraparound payments existed before, during and after the gap period; but, under recherche Eleventh Amendment precedent, a federal court cannot ordinarily order money payments by a state to make up for past violations of a federal statute, Edelman v. Jordan, 415 U.S. 651, 668 (1974):  only if the state were disobeying a forward-looking court order to make such payments could a violation of that order be redressed by a federal court remedial directive to make payments to comply with the preexisting order.[4]

There are general statements in the case law that reversal of a lower court's decision makes the decision a "nullity," e.g., Khadr v. United States, 529 F.3d 1112, 1115-16 (D.C. Cir. 2008), but few general statements are without qualification.  The principle expressed in Khadr is a reliable presumption in most contexts but is not a law of nature. "Reversing" an order granting an injunction often warrants treating the injunction thereafter "as if" it did not exist in the period before the vacation--but not in all circumstances; for example, disobeying an injunction later reversed may still leave one subject to criminal contempt.  E.g., United States v. United Mine Workers of Am., 330 U.S. 258, 294 (1947).

---

[4]Belaval IV, 551 F.3d at 18 n.8; Belaval III, 488 F.3d at 17; see also Frew ex rel. Frew v. Hawkins, 540 U.S. 431, 440 (2004); Hutto v. Finney, 437 U.S. 678, 690-91 (1978); Daubert v. Percy, 713 F.2d 328, 330 (7th Cir. 1983), cert. denied, 465 U.S. 1026 (1984).

Here, the question is what Belaval IV intended in its mandate, and context supplies the answer.  From the issuance of the preliminary injunction onward, a district court order was on the books requiring the formula payment; the district court orders at issue in Belaval IV discontinued the preliminary injunction requiring payment while simultaneously substituting permanent ones requiring payment.  Our remand of the latter contemplated a possible fine-tuning of the injunction--not a retroactive cancellation of a court-ordered obligation to make the formula payments throughout the gap period.

In sum, the court-ordered obligation continued throughout the gap period and the Secretary's Eleventh Amendment objection fails as to payments based upon the permanent injunctions.  Disputes about the amounts due for the gap period, the fine-tuning of the formula for purposes of the permanent injunctions and any other controversies are for the district court in the first instance.  The district court's order denying payment is vacated and the matter remanded for further proceedings consistent with this decision.  Costs are awarded to appellants.

It is so ordered.