# United States Court of Appeals
## For the First Circuit

No. 17-1731

HEALTHPROMED FOUNDATION, INC., f/k/a Dr. Jose S. Belaval, Inc.;
CORP. DE SERVICIOS INTEGRALES DE SALUD INTEGRAL EN LA MONTAÑA,
INC.; MIGRANT HEALTH CENTER, INC.; NEOMED CENTER, INC., f/k/a
Gurabo Community Health Center, Inc.; MOROVIS COMMUNITY HEALTH
CENTER, INC.; CONCILIO DE SALUD INTEGRAL DE LOIZA, INC. (CSILO);
CORPORACION DE SERVICIOS DE SALUD Y MEDICINA AVANZADA, INC.,
(COSSMA),

Plaintiffs, Appellants,

and

CAMUY HEALTH SERVICES, INC.; ATLANTIC MEDICAL CENTER, INC.;
CENTRO DE SALUD FAMILIAR DR. JULIO PALMIERI FERRI, INC.;
CORPORACION DE SERV. MÉDICOS PRIMARIOS Y PREVENCION DE HATILLO,
INC.; COSTA SALUD, INC., f/k/a Rincón Health Center, Inc.; EL
CENTRO DE SALUD DE LARES, INC.; HOSPITAL GENERAL CASTAÑAR, INC.;
RIO GRANDE COMMUNITY HEALTH CENTER, INC.; TOA ALTA COMPREHENSIVE
URBAN/RURAL ADVANCED HEALTH SERVICES, INC.,

Plaintiffs,

v.

DEPARTMENT OF HEALTH AND HUMAN SERVICES; DEPARTMENT OF HEALTH
FOR THE COMMONWEALTH OF PUERTO RICO; LORENZO GONZÁLEZ-FELICIANO,
Secretary, Department of Health for the Commonwealth of Puerto
Rico,

Defendants, Appellees,

and

COMMONWEALTH OF PUERTO RICO; ALEX MICHAEL AZAR, II, as Secretary
of United States Department of Health and Human Services,

Defendants.

No. 17-1812

ATLANTIC MEDICAL CENTER, INC.; CAMUY HEALTH SERVICES, INC.; CENTRO DE SALUD FAMILIAR DR. JULIO PALMIERI FERRI, INC.; CIALES PRIMARY HEALTH CARE SERVICES, INC.; CORPORACION DE SERV. MÉDICOS PRIMARIOS Y PREVENCION DE HATILLO, INC.; COSTA SALUD, INC., f/k/a Rincón Health Center, Inc.; EL CENTRO DE SERVICIOS PRIMARIOS DE SALUD DE PATILLAS, INC.; HOSPITAL GENERAL CASTAÑAR, INC.; EL CENTRO DE SALUD DE LARES, INC.,

Plaintiffs, Appellants,

and

RIO GRANDE COMMUNITY HEALTH CENTER, INC.; TOA ALTA COMPREHENSIVE URBAN/RURAL ADVANCED HEALTH SERVICES, INC.; CONCILIO DE SALUD INTEGRAL DE LOIZA, INC. (CSILO); CORP. DE SERVICIOS INTEGRALES DE SALUD INTEGRAL EN LA MONTAÑA, INC.; CORPORACION DE SERVICOS DE SALUD Y MEDICINA AVANZADA, INC., (COSSMA); HEALTHPROMED FOUNDATION, INC., f/k/a Dr. Jose S. Belaval, Inc.; MIGRANT HEALTH CENTER, INC.; MOROVIS COMMUNITY HEALTH CENTER, INC.; NEOMED CENTER, INC., f/k/a Gurabo Community Health Center, Inc.; MUNICIPALITY OF SAN JUAN,

Plaintiffs,

v.

LORENZO GONZÁLEZ-FELICIANO, as Secretary of Department of Health for Puerto Rico; ALEX MICHAEL AZAR, II, as Secretary of United States Department of Health and Human Services,

Defendants, Appellees,

and

JOHNNY RULLAN; COMMONWEALTH OF PUERTO RICO

Defendants.

———————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Gustavo A. Gelpí, Jr., U.S. District Judge]

———————————

Before

Lynch, Lipez, and Barron,
<u>Circuit Judges.</u>

---

<u>Nicole M. Bacon</u>, with whom <u>James L. Feldesman</u>, <u>Khatereh S. Ghiladi</u>, and <u>Feldesman Tucker Liefer Fidell LLP</u> were on brief, for appellants Atlantic Medical Center, Inc., Camuy Health Services, Inc., Centro de Salud Familiar Dr. Julio Palmieri Ferri, Inc., Ciales Primary Health Care Services, Inc., Corporacion de Serv. Médicos Primarios y Prevención de Hatillo, Inc., Costa Salud, Inc., El Centro de Salud de Lares, Inc., El Centro de Servicios Primarios de Salud de Patillas, Inc., and Hospital General Castañar, Inc.

<u>Robert A. Graham</u>, with whom <u>Iyen A. Acosta</u> and <u>Reno & Cavanaugh, PLLC</u> were on brief, for appellants HealthproMed, Salud Integral en la Montaña, Migrant Health Center, COSSMA, Morovis Community Health Center, NeoMed Center, and Concilio de Salud Integral de Loiza.

<u>Carlos Lugo-Fiol</u>, with whom Solicitor General of Puerto Rico <u>Isaías Sánchez-Báez</u> was on brief, for appellees Commonwealth of Puerto Rico and Lorenzo González-Feliciano, in his official capacity as Secretary of the Department of Health for Puerto Rico.

---

December 4, 2020

---

**LYNCH**, **Circuit Judge**.  These consolidated appeals, and the companion appeal No. 19-1336, arise out of the long-running litigation between Puerto Rico and several Federally Qualified Health Centers (FQHCs) over the Commonwealth's failure to make payments to the FQHCs.  The FQHCs assert new claims that the Commonwealth has again failed to pay in full the statutorily required reimbursement amounts for the services they provide to poor patients under the Medicaid Act.  We dismiss these appeals without reaching the merits, because we conclude that the orders appealed from are void -- having been issued in violation of the stay entered by the Title III court.

## I. Background

The Medicaid Act requires FQHCs to provide care to underserved populations.  States must reimburse the FQHCs for the full cost of these services through a Prospective Payment System (PPS).  42 U.S.C. § 1396a(bb)(1)-(3).  Puerto Rico has contracted with Managed Care Organizations (MCOs) to run its Medicaid program.  The MCOs in turn contract with FQHCs to deliver services as required.  When the MCOs pay less than the PPS rate, Puerto Rico[1] must make up the difference through quarterly supplemental "wraparound" payments.  Id. § 1396a(bb)(5).

---

[1]  Puerto Rico is a state for purposes of the Medicaid statute.  42 U.S.C. § 1301(a)(1).

This litigation has been ongoing since 2003, when the FQHCs first sued the Commonwealth for failure to make the required wraparound payments. The factual and procedural history behind these appeals is described in our eight prior opinions in this matter, including most recently in Municipality of San Juan v. Puerto Rico, 919 F.3d 565 (1st Cir. 2019).[2]

In 2009, the district court appointed a Special Master to oversee the Medicaid payment calculations. In 2010, at the recommendation of the Special Master, the district court entered a preliminary injunction[3] requiring the Commonwealth to make interim payments calculated by the Special Master, and directing the parties to calculate the actual PPS rates and then reconcile the interim payments with the amount actually due under the appropriate PPS formula.[4]

---

[2] These are: Rio Grande Community Health Center, Inc. v. Rullan, 397 F.3d 56 (1st Cir. 2005); Dr. Jose S. Belaval, Inc. v. Peréz-Perdomo, 465 F.3d 33 (1st Cir. 2006); Dr. Jose S. Belaval, Inc. v. Peréz-Perdomo, 488 F.3d 11 (1st Cir. 2007); Concilio de Salud Integral de Loiza, Inc. v. Peréz-Perdomo, 551 F.3d 10 (1st Cir. 2008); Concilio de Salud Integral de Loiza, Inc. v. Peréz-Perdomo, 625 F.3d 15 (1st Cir. 2010); Consejo de Salud de la Comunidad de la Playa de Ponce, Inc. v. González-Feliciano, 695 F.3d 83 (1st Cir. 2012); Rio Grande Community Health Center, Inc. v. Armendáriz, 792 F.3d 229 (1st Cir. 2015); and Municipality of San Juan v. Puerto Rico, 919 F.3d 565 (1st Cir. 2019).

[3] The district court previously entered a preliminary injunction in 2004, but vacated it after Puerto Rico created a PPS office. We reversed that decision in Concilio de Salud Integral de Loiza, Inc., 551 F.3d at 19.

[4] The FQHCs represent that during the period of 2010-2014, "[t]he bulk of the efforts of both the parties and the

- 5 -

By the fourth quarter of 2014, the scope of services that the FQHCs provide had changed. The Medicaid Act obligates the Commonwealth to recalculate the PPS rates to account for the changes in the scope of service. 42 U.S.C. § 1396a(bb)(3)(B). The district court ordered the Special Master to calculate the appropriate PPS rates for the period beginning with the fourth quarter of 2014, and reconcile those rates with the interim payments that the Commonwealth continued to make.

In April 2017, the Special Master issued a report and recommendation, which resolved the parties' disputes over the methodology for calculating the PPS rates, but which led to these appeals. The Special Master recommended that the revised PPS rates be made effective January 1, 2017, rather than the full reconciliation period beginning in the fourth quarter of 2014, in order to "promote[] finality, efficiency, and realistic cost saving targets . . . [and] prevent the administrative burden and uncertainty that . . . retroactive application would imply."

In 2016, Congress passed the Puerto Rico Oversight, Management, and Economic Stability Act (PROMESA), which authorized Puerto Rico to file for the equivalent of bankruptcy protection under Title III of the Act. 48 U.S.C. §§ 2161-2177. On May 3,

Special Master . . . were devoted to resolving disputes over . . . payment rates and . . . the court's interim payment order(s) rather than to reconciliation of the interim payments."

- 6 -

2017, Puerto Rico invoked Title III under PROMESA, and triggered an automatic bankruptcy stay.[5]

After the PROMESA stay took effect, on May 10, 2017, the district court in this litigation adopted the Special Master's April 2017 report and recommendation, approved an agreed-upon formula for calculating Medicaid wraparound payments going forward, and made the new formula effective from January 1, 2017. In August, 2017, the FQHCs brought these consolidated appeals.

In 2019, this court held that the automatic stay applies to the orders at issue in this appeal. <u>Mun. of San Juan</u>, 919 F.3d at 581-82. On June 21, 2019, this court stayed these appeals, which were already in abeyance,[6] in light of our decision in <u>Municipality of San Juan</u>.

---

[5] Title III of PROMESA incorporates parts of the Bankruptcy Code, including 11 U.S.C. § 362(a)(1), which automatically stays "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title."

[6] On December 21, 2017, we ordered the parties to show cause whether the automatic stay applies to these appeals. Both parties stated that this litigation should move forward despite the stay. The FQHCs argued the stay simply should not apply, and the Commonwealth stated "[it] would have no objection to a lift of the stay should Plaintiffs-Appellants so request it pursuant to the procedures established for such purpose in the Title III proceedings." We then placed these appeals in abeyance to permit the parties to seek relief from the automatic stay to the extent that it applied to these appeals.

On July 29, 2019, the parties entered and submitted a stipulation to the Title III court in an effort on their part to permit these appeals to move forward. The stipulation states:

> The Title III Stay is hereby modified solely to the limited extent necessary to allow (a) the pending appeals for the United States Court of Appeals for the First Circuit in Appeals Nos. 17-1731, 17-1812, and 19-1336 to proceed to judgment [and (b) to continue to allow the Commonwealth to make the wraparound payments under the existing formula.]

The Title III court adopted this stipulation without modification in its Eleventh Omnibus Order Granting Relief from the Automatic Stay. We then ordered briefing.

After these appeals were filed, on December 31, 2018, the Special Master issued another report and recommendation, which, among other things, recommended that the district court revise the effective date of the new PPS rates to January 1, 2019, in light of Puerto Rico's financial circumstances. The district court did not adopt this proposal, and left the January 1, 2017, effective date in place. The Commonwealth appealed that decision in appeal No. 19-1336.

## II. Discussion

As to the merits, the FQHCs attempt to challenge the effective date of the revised PPS rates and other portions of the district court's order adopting the Special Master's report and

- 8 -

recommendation.  Because the orders are void, we cannot reach the merits of these issues, and dismiss for lack of jurisdiction.

Our decision in Municipality of San Juan makes clear that the automatic stay applies to the Medicaid litigation.  919 F.3d at 581-82.  The stay became effective May 3, 2017, seven days before the district court's order.  An order which post-dates the stay is void.  In re Soares, 107 F.3d 969, 976-77 (1st Cir. 1997) (an order issued after a bankruptcy stay is void absent "unusual and unusually compelling" circumstances).  A void order is a "legal nullity."  United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260, 270 (2010).  It is "without legal effect."  Baella-Silva v. Hulsey, 454 F.3d 5, 10 (1st Cir. 2006) (quoting Fafel v. DiPaola, 399 F.3d 403, 410 (1st Cir. 2005)).

If the orders underlying this appeal are "without legal effect," we lack jurisdiction to decide their merits.  See Preiser v. Newkirk, 422 U.S. 395, 401 (1975) ("[A] federal court has neither the power to render advisory opinions nor to decide questions that cannot affect the rights of litigants in the case before them." (quoting North Carolina v. Rice, 404 U.S. 244, 246 (1971))).

The FQHCs argue that the parties' stipulation and the Title III court's Omnibus Order permit us to reach the merits of these appeals.  We disagree.  The stipulation and order state only that "[t]he Title III Stay is . . . modified solely to the limited

- 9 -

extent necessary to allow . . . the pending appeals for the United States Court of Appeals for the First Circuit in Appeals Nos. 17-1731, 17-1812, and 19-1336 to proceed to judgment." The Title III court was not asked to and did not lift the stay retroactively.[7] No party has adequately argued the Title III court order has that effect.

In the companion appeal No. 19-1336 the Commonwealth also took the position that In re Soares and 11 U.S.C. § 362(d) permit this court to retroactively lift the automatic stay in appropriate circumstances. The FQHCs endorsed this view. We reject that argument. Neither In re Soares nor the statute gives the court of appeals as opposed to the bankruptcy court such authority. The parties appear to read In re Soares and 11 U.S.C. § 362(d) to give any court confronted with an automatic stay the power to grant retroactive relief in "unusual and unusually compelling circumstances." We see no support for this proposition in the text of 11 U.S.C. § 362(d) or In re Soares. The Bankruptcy Code specifically refers to the powers of the bankruptcy court in particular. In re Soares also states that "11 U.S.C. § 362(d) permits bankruptcy courts to lift the automatic stay retroactively." 107 F.3d at 976 (emphasis added).

---

[7] This does not change the Commonwealth's existing obligation to make wraparound payments under the 2010 preliminary injunction and prior district court orders. The Commonwealth has stipulated that it will continue to make these payments.

- 10 -

This court articulated these same jurisdictional concerns to the parties at oral argument. We ordered that the parties,

> report whether they agree to seek the following relief from the Title III court: (1) An order from the Title III court retroactively lifting the automatic stay as to the district court's May 10, 2017, January 22, 2019, and January 28, 2019 orders, as well as any related orders by the district court, such that no portion of those orders are void under the automatic stay; and (2) An order from the Title III court stating the automatic stay does not limit this court's consideration of the merits of appeal numbers 17-1731; 17-1812; and 19-1336, and this Court has jurisdiction to reach all questions on the merits of these appeals.

But for reasons not stated, the parties responded to our order by stating they "agreed to refrain from seeking any further relief from the PROMESA Title III court with respect to their July 29, 2019 stipulation and the court's Eleventh Omnibus Order."

We decide only that we lack jurisdiction to resolve the merits of the underlying orders, given that they are void. We order <u>dismissal</u> of these appeals.

No costs are awarded.