ROGERS, Circuit Judge,
concurring in part and concurring in the judgment.
I join the court in holding that the government met its burden of proof to show by a preponderance of the evidence that its detention of petitioner Hussain Almerfedi is lawful based on the evidence in the record regarding: (1) Almerfedi’s two and one half month stay at the Jama’at Tablighi center in Lahore, Pakistan; (2) his eastward travel from Tehran to Mash-ad near the Afghan border in late 2001 or early 2002, which was 500 miles in the opposite direction of his purported destination of Greece via Turkey; (3) his possession upon his capture thereafter in Tehran of a large unexplained sum of money; and (4) undisputed evidence about the existence of Bin Laden-funded “guesthouses” in Tehran and the use of hotels in Mashad as waystations for fighters traveling to or fleeing from Afghanistan. See generally Maj. Op. at 6-7. Viewed together, this evidence supports a reasonable inference that Almerfedi was an al-Qaeda facilitator by the time of his capture in early 2002. Almerfedi presented no evidence that would suffice to “rebut [the government’s] evidence with more persuasive evidence,” Hamdi v. Rumsfeld, 542 U.S. 507, 534, 124 S.Ct. 2633, 159 L.Ed.2d 578 (2004).[1] The district court found that Almerfedi’s explanation of his travels was “not ... a convincing explanation,” Almerfedi v. Obama, 725 F.Supp.2d 18, 30 (D.D.C.2010), and was “at the very least, perplexing,” id. at 27. These findings are not clearly erroneous and their implications buttress the government’s “credible evidence,” Hamdi, 542 U.S. at 534, 124 S.Ct. 2633, that Almerfedi’s behavior and travel route fit the profile of an al-Qaeda facilitator. See Maj. Op. at 6-7 (referring to false exculpatory statements).
*9 The court, consequently, need go no further to conclude that the district court erred, under a preponderance of the evidence standard, in granting the petition for a writ of habeas corpus. But it has, Maj. Op. at 7-8, and I write separately to explain why I am unable to join the majority’s analysis of certain recorded statements by another Guantanamo detainee, Humoud al-Jadani.
Under a preponderance of the evidence standard, the district court must “determine whether a proposition is more likely true than not true based on evidence in the record,” Maj. Op. at 5 (emphasis added). The majority rejects the district court’s evaluation of al-Jadani’s statements based on unnamed sources as “jailhouse gossip” and “inherently unreliable,” Almerfedi, 725 F.Supp.2d at 25. The district court found that the government cited no record evidence to verify that Almerfedi had been transferred to Guantanamo by the time of the first set of al-Jadani statements, id. at 24 n. 4, or that al-Jadani was referring specifically to Almerfedi, see id. at 26.
The majority implies that this court owes a lesser standard of deference to the district court’s factual findings regarding al-Jadani’s statements because the district court did not make “a credibility determination based on [live] witness testimony.” Maj. Op. at 7. Our review, however, of “a district court’s factual findings [is] for clear error, regardless of whether the factual findings were based on live testimony or, as in this case, documentary evidence.” Awad v. Obama, 608 F.3d 1, 6-7 (D.C.Cir. 2010). The court explained in the identical procedural context that “[a] finding is ‘clearly erroneous’ when although there is evidence to support it, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed.” Id. at 7 (quoting Boca Investerings Partnership v. United States, 314 F.3d 625, 629-30 (D.C.Cir.2003)). If the district court’s factual finding is “plausible in light of the record viewed in its entirety,” this court “may not reverse” because “[w]here there are two permissible views of the evidence, the factfinder’s choice between them cannot be clearly erroneous.” Id. (quoting Overby v. National Ass’n of Letter Carriers, 595 F.3d 1290, 1294 (D.C.Cir.2010)) (omission in original).
The record evidence does not lead to a “firm conviction” that the district court’s analysis of al-Jadani’s statements was mistaken, much less implausible. The first set of statements by al-Jadani purported to recount statements by four unnamed Guantanamo detainees that someone referred to as “Hussein ((Al-Adeni))” stayed in a Tehran “guesthouse” in late 2000 into early 2001. Almerfedi, 725 F.Supp.2d at 24-25. The district court found these statements were “inherently unreliable” and “jailhouse gossip” because al-Jadani did not identify the four detainees or the sources for their information, id. at 25. This evaluation by the district court is “plausible in light of the record,” Awad, 608 F.3d at 7, inasmuch as the dates these sources provided, as related by al-Jadani, are inconsistent with the date of Almerfedi’s departure from Yemen in September 2001, Almerfedi, 725 F.Supp.2d at 25. The majority hypothesizes that it is “quite understandable” that al-Jadani would be reluctant to identify the four detainees. Maj. Op. at 7-8. Even if true, the district court’s finding was consistent with the proposition that a damning accusation from unidentified sources without any indication of the basis for their knowledge provides no basis to credit the accusation even if the person recounting the accusation is otherwise credible. Cf. Aguilar v. Texas, 378 U.S. 108, 113-14, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). And, as the district court found, the government had *10 not verified that Almerfedi was at Guantanamo by the time al-Jadani recounted this information. Id. at 24 n. 4. The government states for the first time in its reply brief that at the time of al-Jadani’s statements Almerfedi was “the only person named Hussein from Aden at Guantanamo,” Reply Br. 4 (emphasis in original).[2] Assuming this argument is properly before the court, but see Khadr v. United States, 529 F.3d 1112, 1117 (D.C.Cir.2008), a website cited in the reply brief as support does not, as asserted, assist the government, id. at 14 n. 2.[3]
By contrast, al-Jadani identified two sources for his information about al Qaeda guesthouses in Tehran and how those sources obtained their knowledge, specifically that the sources had themselves stayed in the guesthouses. The district court described this evidence, 725 F.Supp.2d at 24, and in findings never rejected it, instead concluding, in effect, that assuming the existence of such guesthouses, the government had not shown by a preponderance of the evidence that ALmerfedi was ever in Iran before the fall of 2001, id. at 25. Absent a finding to which this court could defer, our review is de novo. See, e.g., United States v. Microsoft Corp., 147 F.3d 935, 945 n. 7 (D.C.Cir. 1998). As the government notes, “the district court did not question the reliability of al-Jadani’s statements relaying information he received directly from al-Qaiti, who provided detailed — and consistent — information about the operation of al-Qaeda guesthouses in Tehran.” Pet’r’s Br. 44. Of course, the existence of the guesthouses and whether Almerfedi stayed in a such a house are two different questions; Almerfedi contests only the latter, leaving the former evidence unrebutted.
The second set of statements by al-Jadani purport to be a conversation with “Hussain al-Adeni.” Almerfedi, 725 F.Supp.2d at 26 & n. 6. The district court did not credit these statements because there was an insufficient basis in the record to conclude that al-Jadani was referring to Almerfedi and other government *11 evidence did not corroborate al-Jadani’s account, id. at 26-27; Maj. Op. at 7-8. The district court’s conclusion that the statements “cannot be credited” and are “unreliable,” Almerfedi, 725 F.Supp.2d at 27, is at least “plausible in light of the record,” Awad, 608 F.3d at 7. To the extent the majority suggests that the circumstances of al-Adeni’s capture seem to match those of Almerfedi (who was arrested by Iran, transferred to Afghan custody, and then transferred to U.S. custody) and posits this path was “unique,” Maj. Op. at 7-8, the government neither makes such a claim nor points to record evidence that would undermine the district court’s conclusion that the coincidence of paths “add[s] little” to the government’s case that Almerfedi stayed in Tehran guesthouses, Almerfedi 725 F.Supp.2d at 27, much less to show that this evaluation was not plausible.

. In connection with being approved for release from Guantanamo, Almerfedi notes in his brief that the report on his voluntary polygraph examination in 2003 stated that "it appeared he had been truthful" when he denied ever associating with al Qaeda and when he explained his reasons for leaving home in Yemen. The reliability of such evidence is not beyond doubt, see United States v. Scheffer, 523 U.S. 303, 309-11 & nn. 6-8, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998), but, in any event, the report noted that Almerfedi's description of his stay at the Jama'at Tablighi center for over two months “appeared unrealistic.” Report of Polygraph Examination May 2, 2003, JA 374. Further, the determination whether to release a detainee pursuant to the Executive Order of Jan. 22, 2009 involves a different question not at issue in a habeas corpus proceeding. See Awad v. Obama, 608 F.3d 1, 11 (D.C.Cir.2010).

. The government also states in its reply brief that Almerfedi was the only person named "Hussein” at Guantanamo at the time. Reply Br. 4. Almerfedi’s given name is "Hussain” not "Hussein.” This may be a typographical error in the reply brief or both spellings may be alternative transliterations of the same Arabic name.

. The extra-record Department of Defense website (http://www.defense.gov/news/May 2006/d20060515% 20List.pdf) is a list of the detainees at Guantanamo from January 2002 through May 15, 2006, with the date and location of their birth, but not their residence prior to the time of capture. Assuming the court may take judicial notice of this document, in that its contents are "not subject to reasonable dispute” and "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned,” Fed.R.Evid. 201, the document is of limited value. In its opening brief, the government explained that "al-Adeni” or "alAdani” is a kunya, i.e., an honorific indicating the bearer is a father or mother (with a father’s beginning with "Abu”), although some insurgents use a kunya representing the region they are from; by contrast, a nisha may describe the occupation, descent, tribe or residence of the person and begins with "al.” Appellant’s Br. 35 (citing a 2008 Defense Intelligence Agency ("DIA”) report on "Names, Alias, Kunyas and Variants”). The majority rejects the government's view that "al-Adeni” is a kunya, concluding it is, if anything, a nisha. Maj. Op. at 3. The website list of detainees indicates Almerfedi was the only Guantanamo detainee named Hussein who was born in Aden. The list, however, does not refer to the place of the detainee’s residence, and a suggestion that a nisha is based on place of birth would contradict the government’s evidence defining nishas. But see Maj. Op. at 3 n. 1. Thus the list does not confirm that Almerfedi was the only detainee named Hussain (or Hussein) to have resided in Aden; at least two other detainees named Hussain (or Hussein) were born in Yemen.